FILED
2013 May-15  AM 09:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | |
|---|---|
| **PAMELA HEADLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CV 4:11-2659-RBP** |
| ) | |
| **B.L. MCCRACKEN and R.L. CUMBY,** ) | |
| **in their individual capacities as** ) | |
| **Police Officers of the City of Steele,** ) | |
| **Alabama,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION**

This matter comes before the court on the defendants' Motion for Summary Judgment

filed on January 31, 2013. Plaintiff responded to the Motion on February 19, 2013. Defendants

replied on March 5, 2013.

**<u>Facts</u>**[1]

On July 25, 2009, plaintiff Pamela Headley was driving her car through Steele, Alabama.

Defendant Officer B.L. McCracken had his patrol car parked on the side of the road and

witnessed the plaintiff's car pass. Officer McCracken pulled onto the road and followed the

plaintiff's car. McCracken observed the plaintiff's car weaving within its lane and proceeded to

pull Headley over.[2] Officer McCracken asked for Headley's identification and insurance

information. Headley's insurance card was out of date.  McCracken started to write a ticket for

---

[1] The court considers the facts in the light most favorable to the non-movant. *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006).

[2] As will be later noted, the plaintiff does not make a claim related to the stop itself.

1

no proof of insurance. While McCracken worked on the citation paperwork, defendant Sgt. R.L. Cumby arrived on the scene to assist McCracken. Cumby requested Headley's passenger to exit the car and administered a pat-down of the passenger. There was a discussion about gangs. The passenger, a Hispanic male, was found to be free of weapons. The passenger was told to walk away.  He left the scene.

McCracken questioned Headley regarding the contents of her drink inside her car, determining that the liquid was not alcoholic. Cumby stated he would like to search Headley's car for weapons. Headley replied "that she did not have any weapons in her car." Cumby proceeded to search the passenger compartment of Headley's vehicle, limiting his search to areas within Headley's reach. He located several prescription medications, including "Lortab, Nexium, Albuterol, and Oxycodone."[3]  Headley admits that all medications had prescriptions affixed to the bottles, except for the Oxycodone. When questioned as to why the Oxycodone did not have a prescription label affixed to it, Headley explained it had accidently been washed off. She informed the officers that there was an extra pharmacy label for the Oxycodone in her purse to verify her prescription.[4]

Officer McCracken informed Headley that she was being arrested for unlawful possession of a controlled substance (Oxycodone). It is undisputed that Headley did not resist defendant McCracken's attempts to handcuff her. Headley acknowledges that McCracken was professional and courteous during her handcuffing. Headley requested that McCracken cuff her in front due to

---

[3] Again, no claim is made as to the search.

[4] There is a question of fact as to whether Cumby and/or McCracken saw and retained a label for Oxycodone.

pain from a recent surgery. McCracken denied this request and cuffed Headley behind her back.

Though McCracken refused her request, she admits he was not trying to hurt her at any time.

Defendant McCracken testified to having checked the handcuffs for tightness when he put them

on Headley and that the cuffs "were still double locked in the same position and [he] could still

fit a finger in when [they] got to the jail." Defendant McCracken admits he did not respond to her

request to loosen the handcuffs while en route to the jail, explaining that "[t]he danger to the

suspect and myself stopping on the side of I-59 was a little bit greater than a couple minutes to

get to the jail." Headley requested access to her Albuterol (asthma inhaler), but McCracken

refused.[5]

Headley was booked into the St. Clair County Jail, where she was placed in a holding cell

that she describes as the "Drunk Tank." During Headley's detention, she experience "several

breathing attacks . . . shortness of breath." She requested access to her Albuterol and was told

that McCracken had not left her medications at the jail, but rather had placed her medications in

the evidence lockup at the Steele City Police Department. Headley was told she could get

Albuterol medication through a request to the nurse, but chose not to make such a request.

Headley spent 20 hours in the holding cell she described as the "Drunk Tank" before being

moved to a different cell containing a bunk bed.

On July 27, 2009, Officer McCracken swore to obtain an arrest warrant before a

magistrate on the charge of unlawful possession of a controlled substance, as codified in Ala.

---

[5] No claim is made as to excessive force or deliberate indifference to purported medical problems.

3

Code 13A-12-212.[6] After the warrant was issued, Headley posted the required bond and was

released from detention. On August 3, 2009, Headley filed her medical records, pharmacy

records, and prescription information, showing a valid prescription for Oxycodone, in the District

Court of St. Clair County. Headley was arraigned on August 12, 2009 and entered a plea of not

guilty. A grand jury returned a no-bill on November 29, 2009.

### Summary Judgment Legal Standard

Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, summary judgment is

proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law."  "Rule 56(c) mandates the entry of summary judgment, after adequate time

for discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The

moving party bears the initial burden of proving the absence of a genuine issue of material fact.

*Id*. at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the

pleadings" to establish that there is a "genuine issue for trial."  *Id*. at 324 (citation and internal

quotation marks omitted).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  The court must construe the evidence and all reasonable inferences arising from it in

---

[6] Plaintiff claims that Cumby signed an arrest report, but not that he swore to obtain the warrant.  Plaintiff testified that she had two copies of the Oxycodone label.  She has also presented evidence that a physician prescribed Oxycodone on Feb. 9, 2009.

the light most favorable to the non-moving party.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor).  "On summary judgment, "[i]f there is conflict between the plaintiff's and the defendant's allegations or in the evidence, the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor." *Shotz v. City of Plantation, Fla.*, 344 F. 3d 1161, 1164 (11th Cir. 2003) (quoting *Molina v. Merritt & Furman Ins. Agency*, 207 F. 3d 1351, 1356 (11th Cir. 2000)). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## Legal Analysis

In a recorded telephone conference conducted on April 23, 2013, the plaintiff's attorney acknowledged that:

(1) The only remaining claims are against McCracken and Cumby.

(2) The claims against McCracken and Cumby are against them in their individual capacities only.

(3) The same claims are made against McCracken and Cumby and these claims are limited, as to each defendant, to (a) malicious prosecution; (b) false imprisonment; and (c)  false arrest.

5

(4) All three of these claims rely upon the same evidence and are effectively one claim against each defendant.

The court concludes that these three claims all involve matters relating to the arrest and the charge by McCracken based upon plaintiff's possession of Oxycodone.  The basic Oxycodone issue raises the following questions:

(1) To what extent, if any, can Cumby be held liable for his and/or McCracken's actions?

(2) Did the lack of a label on the Oxycodone in the possession of the plaintiff defeat plaintiff's constitutional violation claim(s) or, at least, create a reasonably arguable basis for the arrest and charge so as to allow the defendants to prevail on qualified immunity defenses?

(3) If the defendant(s) failed to investigate whether the plaintiff had such a label in her possession would the answer to (2) immediately above be different?

(4) Is there any evidence that the plaintiff possessed a prescription label for the Oxycodone which was obtained and retained by the defendants?

Plaintiff Headley brings her claim(s) pursuant to 42 U.S.C. § 1983, which states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

An action alleged against municipal officials in their individual capacities allows the officials to assert a defense of qualified immunity. "Qualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" *Hope v. Pelzer*, 536 U.S.

6

730, 739 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). Therefore, "[g]overnment officials performing discretionary functions are entitled to qualified immunity 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lancaster v. Monroe County*, 116 F.3d 1419, 1424 (11th Cir. 1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Officers are entitled to qualified immunity unless the "supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances." *Bozeman v. Orum*, 422 F.3d 1265, 1273 (11th Cir. 2005) (internal quotation marks and citations omitted). In other words, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments." *Messerschmidt v. Millender*, __U.S.__, 132 S.Ct. 1235, 1344-45 (2012). Therefore, "'[b]ecause qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity.'" *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998) (quoting *Lassiter v. Alabama A & M Univ. Bd. of Trs.*, 28 F.3d 1146, 1149 (11th Cir. 1994)). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted).

To receive qualified immunity from suit, "the government official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Mathews v. Crosby*, 480 F.3d 1265, 1269 (11th Cir. 2007). Government officials act

within the scope of their discretionary authority if "the actions were (1) 'undertaken pursuant to the performance of [their] duties' and (2) 'within the scope of [their] authority.'" *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1998)). "Exercising judgment in the enforcement of the criminal laws of the State" and "in the administration of a department or agency of government" are recognized discretionary functions. *Ex parte Cranman*, 792 So. 2d 392, 402 (Ala. 2000). The burden then shifts to the plaintiff to demonstrate that qualified immunity is not appropriate by showing that (1), taken in the light most favorable to the party asserting the injury, "the government official's conduct violated a constitutional right" and (2) the constitutional right was "clearly established" by preexisting federal law at the time of the action. *Mathews*, 480 F.3d at 1269 (citing *Saucier*, 553 U.S. at 201). A court need no longer follow the rigid two-prong approach introduced in *Saucier*. The Supreme Court has now held that "judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"'Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken.'" *Messerschmidt*, 132 S.Ct. at 1244-45 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). In the Eleventh Circuit, "the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega Bd. of Educ.*, 115 F.3d 821,

827 (11th Cir. 1997) (en banc) (internal citations omitted). To be "clearly established," pre-existing law must provide "fair warning" to the defendant government official that his conduct was illegal. *Messerschmidt*, 132 S.Ct. at 1244-45.

Because the defendants have both asserted defenses of qualified immunity, the claim(s) will be analyzed under this rubric. The defendants have established all events at issue were within the scope of their discretionary authority. Headley has not disputed this. Therefore, the court's analysis focuses on (1) whether the defendants committed a constitutional violation, then (2) whether the constitutional right allegedly violated was "clearly established" at the time.

Plaintiff Headley claims that her arrest was without probable cause, violating the Fourth and Fourteenth Amendments. Specifically, she claims that the defendants failed to "conduct[] a reasonable investigation to ascertain that Headley had in her possession a prescription label for Oxycodone."[7] Probable cause to arrest is sufficient "when an arrest is objectively reasonable based on the totality of the circumstances." *McCormick v. City of Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (internal quotations omitted). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id* (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002)). It is important to note that attaining probable cause "does not require convincing proof" and "need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Rankin v. Evans*,

---

[7] On the other hand, she claims that they took her prescription label for Oxycodone along with the Oxycodone pills and other pills, labels, etc. and retained them.

133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotations omitted).

"[A]rguable probable cause . . . is 'all that is required for qualified immunity to be applicable to an arresting officer.'" *Lee*, 284 F.3d at 1195 (quoting *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001)). To determine if arguable probable cause existed, the court asks whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant [ ] could have believed that probable cause existed to arrest." *Id*. However, "an officer must conduct a constitutionally sufficient investigation before making an arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1228-30 (11th Cir. 2004).  A government official "violates the Constitution if, in order to obtain a warrant, she perjures herself or testifies in reckless disregard of the truth."  *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994).  Officials need not explore every proffered claim of innocence, but they "may not ignore exculpatory information of which they are actually aware in deciding whether to arrest." *Smith v. Greenlee*, No. 08-10405, 2008 WL 3523999, at *3 (11th Cir. Aug. 14, 2008).  Qualified immunity "does not offer protection if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff." *Holdmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003) (citations and internal quotation marks omitted).

In the instant case, Headley admits that the container of Oxycodone was the only bottle without a prescription label. However, she testified that an extra prescription label for the Oxycodone was in her purse at the time of her arrest. She also testified that the defendants saw and retained the extra prescription label at the scene of the arrest. The defendants contradict Headley's claim and assert that there was no separate prescription label which they saw or

retained.

Because the Eleventh Circuit's standard requires resolution of all issues of material fact in favor of the non-movant for disposition of a summary judgment motion, the court has to resolve the factual dispute in favor of Headley and ask whether any defense can be maintained under that version of facts. *See West v. Tillman*, 496 F.3d 1321, 1326 (11th Cir. 2007). If a defendant was actually aware of the prescription label, or could have so determined on investigation, he should not have ignored such exculpatory information in his decision to arrest. *See Smith,* 2008 WL 3523999, at *3. The court will deny defendants' defenses.

## Conclusion

The court concludes that the defendants' motion for summary judgment should be denied as to each defendant.  While the evidence is less clear as to Cumby, the totality of circumstances leaves some question as to his overall involvement.[8]  If any issue remains as to whether there is any reason to separate the malicious prosecution, false arrest and false imprisonment claims, the court can help resolve the matter through obtaining special verdicts.[9]  The damage claims would likely be the same in any event.  This Memorandum Opinion will take the place of the proposed pretrial order.  The case is set for trial in Anniston, Alabama on July 22, 2013.[10]

This the 15th day of May, 2013.

_____

[8] In addition to other facts, he apparently was the senior officer.

[9] Because of procedural issues, there is more doubt as to the malicious prosecution claim than as to the other claims.  *See Wood v. Kesler*, 323 F. 3d 872, 881 (11th Cir. 2003)*; Uboh v. Reno*, 141 F. 3d 1000, 1004 (11th Cir. 1998); *Kingsland v. City of Miami*, 382 F. 3d 1220, 1235 (11th Cir. 2004)*; Mejia v. City of New York,* 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000)).

[10] See attached Standard Pretrial Procedures and Addendum to Pretrial Order.

## STANDARD PRETRIAL PROCEDURES

1. **Damages.**  The parties shall by _____6/10/13_____ serve and file a list itemizing all damages and equitable relief being claimed or sought, showing the amount (and, where applicable, the method and basis of computation) of such items.

2. **Witnesses--Exchange of Lists.**

(a) **Expert witnesses.**--To the extent the parties have not previously complied with F.R.Civ.P. 26(a)(2), the parties shall by _____6/1/2013_____ serve and file a list stating the names and addresses of all expert witnesses who have been identified in accordance with the report of the parties' planning meeting under F.R.Civ.P. 26(f) and in accordance with earlier orders and whose testimony they may offer at trial.  The list shall include, to the extent not previously provided, the information specified in F.R.Civ.P 26(a)(2)(B) with respect to any such person other than a medical expert.

(b) **Other witnesses.**--To the extent the parties have not previously complied with F.R.Civ.P. 26(a)(3), the parties shall by _____6/10/2013_____ serve and file a list stating the names and addresses of all witnesses (other than expert witnesses) whose testimony they may offer at trial.

(c) **Contents of lists.**--The parties shall appropriately indicate on such lists (1) which are their "primary" witnesses (those whose testimony they expect to offer, absent a favorable ruling on summary judgment, directed verdict, or involuntary dismissal), (2) which are their "optional" witnesses (those whose testimony will probably not be needed, but who have been listed to preserve their right to offer such testimony should the need arise in the light of developments at trial), and (3) which of their primary and optional witnesses they expect to present by means of depositions.

Unless specifically agreed by the parties or allowed by the court for good cause shown, the parties shall be precluded from offering substantive evidence through any witness not so listed. The listing of a witness does not commit the party to have such witness available at trial or to call such witness to testify, but does preclude the party from objecting to the presentation of such witness's testimony by another party.  As to any witnesses shown on such list to be presented by deposition, within 14 days after the filing of such list, a party may serve and file a list disclosing any objections to the use under Rule 32(a) of a deposition designated by another party pursuant to the foregoing or under F.R.Civ.P. 26(a)(3)(B).  Objections not so disclosed, other than objections under Rules 402 and 403 of the Federal Rules of Evidence, shall be deemed waived unless excused by the court for good cause shown.

3. **Exhibits.**

(a) **Exchange of lists**.-- To the extent the parties have not previously complied with

F.R.Civ.P. 26(a)(3)(C), the parties shall by _____6/10/2013_____ serve and file a list providing an appropriate identification of each document or other exhibit, including summaries of other evidence, separately identifying those which the party expects to offer and those which the party may offer if the need arises.  As to any document or other exhibit, including summaries of other evidence shown on such list, within 14 days after the filing of such list, a party may serve and file a list disclosing any objection, together with the grounds therefor, that may be made to the admissibility of materials identified on such list.  Objections not so disclosed, other than objections under Rules 402 and 403 of the Federal Rules of Evidence, shall be deemed waived unless excused by the court for good cause shown.  Unless specifically agreed by the parties or allowed by the court for good cause shown, the parties shall be precluded from offering as substantive evidence any exhibit not so identified.  Except where beyond the party's control or otherwise impractical (*e.g.*, records from an independent third-party being obtained by subpoena), each party shall make such exhibits available for inspection and copying.

### Exhibit A

(b)  **Marking.**--Each party which anticipates offering as substantive evidence as many as <u>six</u> exhibits shall premark such exhibits in advance of trial, using exhibit labels and exhibit lists available from the Clerk of Court.  By the time the case is scheduled for trial, a copy of the exhibit list shall be served and filed, with the exhibits being made available for inspection by opposing counsel; the presentation of evidence at trial shall not ordinarily be interrupted for opposing counsel to examine a document that has been so identified and made available for inspection.

4.  **Special medical provisions.**--Counsel for all parties are hereby granted the right to inspect and copy all hospital and medical reports relative to the medical care, treatment, diagnosis, condition, and history of \_\_\_\_6/1/2013_____, together with the right to interview (in person or otherwise) all physicians, administrators and other personnel in connection therewith.  A copy of this order shall constitute sufficient authority for such inspection, copying, or interview.

(Page 2 of 2)

ADDENDUM TO PRETRIAL ORDER

Ten (l0) days prior to the scheduled trial date, each party will submit to the court, in chambers, the following:

l. A listing of what each party understands to be the essential elements of each plaintiff's claim(s) (separate listing for each claim).

2. A listing of what each party understands to be the essential elements of each defendant's defense(s) (separate listing for each defense).

3. A listing of what each party understands to be the essential elements of each defendant's counterclaim(s), if any (separate listing for each counterclaim).

4. A listing of any special evidentiary or other anticipated legal problems with case or statutory citations to support party's position with regard thereto.

5. Motions in limine are to be filed within ten (10) days of trial date.

This case is scheduled to be placed on a trial docket to begin **July 22, 2013 in Anniston, Alabama**. Any requests for continuances should be made within ten (l0) days after the date this order is entered.

**THE COURT WILL EXPECT ALL PARTIES TO BE READY FOR TRIAL AS OF THE STATED TENTATIVE DATE UNLESS CONTINUANCE IS REQUESTED WITHIN SAID TEN (10) DAYS. CONTINUANCES BASED ON INADEQUATE PREPARATION WILL NOT BE <u>FAVORABLY CONSIDERED</u>.**

**1. THE COURT CALLS TO THE ATTENTION OF ALL PARTIES THE VARIOUS TIME REQUIREMENTS IN THE PRETRIAL ORDER AND EXHIBITS THERETO. IN ORDER TO AVOID LAST MINUTE REQUESTS FOR RULING BY THE COURT, THESE REQUIREMENTS WILL BE STRICTLY ADHERED TO. THE PARTIES ARE URGED TO COMPLY, UNLESS REQUIREMENTS ARE WAIVED, IN WRITING, BY OTHER PARTIES.**

**2. PARTIES MAY, IF THEY DESIRE, FILE TRIAL BRIEFS. ANY SUCH BRIEFS MUST BE FILED AT LEAST TEN (10) DAYS PRIOR TO TRIAL. OPPOSING PARTIES WILL RESPOND AT LEAST FIVE (5) DAYS PRIOR TO TRIAL.**

**3. MOTIONS TO COMPEL IN DISCOVERY MATTERS SHOULD BE FILED PROMPTLY, AFTER ATTEMPTS AT RESOLUTION HAVE FAILED, SO AS TO AVOID DELAYS IN PREPARATION.**

**4. IF EITHER PARTY WISHES THE CASE BE SUBMITTED TO THE JURY ON SPECIAL INTERROGATORIES OR SPECIAL VERDICTS, SUCH INTERROGATORIES OR VERDICTS SHOULD BE SUBMITTED TO THE COURT BY 8:30 A.M. ON THE MORNING OF TRIAL.**

**5. CASES ANNOUNCED SETTLED BEFORE SCHEDULED TRIAL DATES WILL BE DISMISSED, WITH PREJUDICE, EACH PARTY TO BEAR OWN COSTS, ON THE SCHEDULED TRIAL DATE UNLESS A DIFFERENT STIPULATED JUDGMENT FORM IS SUBMITTED ON THE SCHEDULED TRIAL DATE.**